## UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**MICHIGAN EDUCATION ASSOCIATION**
**FAMILY RETIRED STAFF ASSOCIATION,**
a Michigan nonprofit corporation, **GLENNA**
**PARKER,** and **CAROLEE SMITH,**
individuals,

        Plaintiffs,

vs.

       Civil Action No.
       Honorable

**MICHIGAN EDUCATION ASSOCIATION,**
a union affiliated with local unions that represent
public school employees and other employees in
the state of Michigan, **MICHIGAN EDUCATION**
**SPECIAL SERVICES ASSOCIATION,** a
Michigan nonprofit corporation, and
**MEA FINANCIAL SERVICES, INC.**
a Michigan corporation,

        Defendants.

BUTZEL LONG, a professional corporation
Mark T. Nelson (P27305)
Lynn McGuire (P57124)
301 E. Liberty St., Suite 500
Ann Arbor, Michigan  48104-2283
T: (734) 995-3110
F: (734) 995-1777
mcguire@butzel.com
nelsonm@butzel.com
Attorneys for Plaintiffs

### VERIFIED COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiffs **MICHIGAN EDUCATION ASSOCIATION FAMILY RETIRED STAFF**

**ASSOCIATION** ("RSA"), on behalf of its members, **GLENNA PARKER** ("Ms. Parker"), and

**CAROLEE SMITH** ("Ms. Smith") (collectively, "Plaintiffs"), for their Verified Complaint

against Defendants **MICHIGAN EDUCATION ASSOCIATION** ("MEA"), **MICHIGAN**

**EDUCATION SPECIAL SERVICES ASSOCIATION** ("MESSA"), and **MEA FINANCIAL SERVICES,** ("MEA-FS") (collectively, "Defendants"), state as follows:

1.      This action arises out of Defendants' violation and threatened further violation of Plaintiffs' rights under collective bargaining agreements under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, the Employee Retirement Income Security Act of 1974 ("ERISA"), as well as contractually enforceable rights, by unilaterally reducing benefits which had expressly become vested for life under a group health benefit plan.

## PARTIES, JURISDICTION AND VENUE

2.      Defendant MEA is a union with its principal offices at 1216 Kendale Blvd., East Lansing, MI 48823.  MEA is affiliated with local unions that represent public school employees and other employees in the state of Michigan.  MEA employs individuals in its headquarters and throughout the state of Michigan.

3.      Defendant MESSA is a Michigan nonprofit corporation with its principal offices at 1475 Kendale Blvd., East Lansing, MI 48826.  MESSA is organized as a member-owned "voluntary employee beneficiary association" under Section 501(c)(9) of the Internal Revenue Code of 1984, as amended, and serves as a vehicle for providing group health insurance to employees of MEA affiliates and other entities.  MESSA employs individuals principally at its headquarters in East Lansing.

4.      Defendant MEA-FS is a Michigan corporation with its principal offices at 1216 Kendale Blvd., East Lansing, MI 48823.  MEA-FS provides retirement and insurance programs to employees and retirees of MEA affiliates and other entities.  MEA-FS employs individuals principally at its headquarters in East Lansing.

5.     Plaintiff RSA is a voluntary, dues-supported Michigan nonprofit corporation, with its registered office at 2827 Arlington Road, Lansing, MI  48906.  RSA's 565 members are all retired employees, or family members of retired employees, of MEA, MESSA, and/or MEA-FS or their predecessors.  RSA has associational standing to act on behalf of its members because: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.  Additionally, RSA holds revocable powers of attorney from 460 of its members to negotiate and litigate with the Employers on their behalf with respect to the matters alleged in this Complaint.

6.     Plaintiff Glenna Parker resides at 19580 Thompson Lane, Three Rivers, Michigan.  She retired in 2006 at age 65 with 17 years of service from MEA.  She is married and both she and her husband are over age 65.

7.     Plaintiff Carolee Smith resides at 13755 Lehman Rd., Westphalia, Michigan.  She retired in 1994 at age 50 with 30 years of service from Michigan Education Data Network Association ("MEDNA"), a then-subsidiary of MEA, the latter of which is now the successor to MEDNA's liabilities.  She is married and both she and her husband are over age 65.

8.     Jurisdiction is proper with respect to Count I under Section 301 of the LMRA; with respect to Counts II and III under Section 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1); and with respect to Count IV under the doctrine of pendent or supplementary jurisdiction, 28 U.S. Code § 1367, because Count IV involves state law claims that are so related to claims under Counts I through III that they form part of the same case or controversy.

9.     Venue is proper in this Court under both Section 301(c)(2) of the LMRA and Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), because Defendants' principal offices are

located in this district, the relevant employee benefit plan or plans are administered in this
district, and the breaches and threatened breaches of ERISA described in this Complaint have
taken or will take place in this district.

### GENERAL ALLEGATIONS

10.     The United Staff Organization is a labor organization within the meaning of
Section 2(5) of the LMRA, 29 U.S.C. § 152(5).  The United Staff Organization is an umbrella
union of five (previously six) individual unions, including the Professional Staff Association,
representing specific classes of employees of the Defendants.  The United Staff Organization
represents the staffs of the Defendants with respect to retirement and retiree fringe benefits,
including retiree health benefits.

11.     At all relevant times, the United Staff Organization and its predecessors and
affiliates (collectively, "USO") were the exclusive collective bargaining representatives of units
of employees of the Defendants, including many members of RSA and Plaintiffs Ms. Parker and
Ms. Smith while they were working.

12.     The Michigan Executive Directors Association ("MEDA") is also a labor
organization within the meaning of Section 2(5) of the LMRA, 29 U.S.C. § 152(5).  At all relevant
times, MEDA was the exclusive collective bargaining representatives of units of employees of the
Defendants, including many members of RSA.

13.     USO and the Defendants were signatories to a series of collective bargaining
agreements covering bargaining unit employees at the Defendants' various facilities.  MEDA and
the defendants were also signatories to a series of collective bargaining agreements covering
bargaining unit employees at the Defendants' facilities, all of which contained "me-too" clauses

4

providing the covered employees with retiree benefits identical to those negotiated by USO and its predecessor.

14.     Each of the collective bargaining agreements between USO and the Defendants provided that the Defendants would provide retirees with hospital, surgical, medical, vision, dental, and prescription drug coverage upon specified terms.  At all times the Defendants, as well as USO and MEDA (collectively, the "Unions"), intended, understood, and agreed that the negotiated retiree health benefits would vest for life upon retirement, at the level in effect upon the date of retirement.

15.     The latter intent and understanding was expressly committed to writing by Defendants, in a binding agreement.  On March 26, 1993, Robert Marshall, acting on behalf of the Defendants, and S. Dale Lathers, acting on behalf of USO , signed a Letter of Understanding (the "LOU") (Exhibit A, "March 26, 1993 Letter of Understanding"), which provides, *inter alia,* that:

> The parties acknowledge that *retiree fringe benefits described in Schedules A and B become vested for life* on commencement of monthly retirement benefits under the MEA/MESSSA/MEDNA/MEA-FS Staff Retirement Plan and Trust, regardless of whether premium payments are made through the plan or from other sources.
>
> (Emph. added)

16.     Schedules A and B to the LOU describes the retiree medical benefits heretofore provided by Defendants to RSA's members and the individual Plaintiffs, which are the subject of this Complaint.

17.     Schedule B to the LOU (Exh. A) contains an undertaking, which upon information and belief was periodically repeated and published by the Defendants, and included

at all relevant times, including throughout the career of many of RSA's members, in an Employee Handbook maintained by MEA (the "Employee Handbook") (Exhibit B, Excerpt from "MEA Employee Handbook"), providing that noncollectively bargained employees of the Defendants would be entitled to the same retiree medical benefits as similarly situated, correspondingly senior collectively bargained employees. The express "vested for life" language from the LOU accordingly extended to the benefits of noncollectively bargained employees of the Defendants.

18.     Official plan documents adopted as part of Defendants' retiree medical plan under ERISA also explicitly state that retiree medical insurance benefits are "vested" for all participants who satisfied the necessary age and service conditions. These include Section 3.03 of the Amended and Restated MEA, MESSA, MEA Financial Services Retiree Health Benefit Plan and Trust (the "VEBA Document") (Exhibit C, "Amended and Restated MEA, MESSA, MEA Financial Services Retiree Health Benefit Plan and Trust" (undated copy, which on information and belief does not materially differ from the executed version), and Section 19.03 of the MEA – MESSA - MEA Financial Services Staff Retirement Plan and Trust (the "Retirement Plan") (Exhibit D, "MEA – MESSA - MEA Financial Services Staff Retirement Plan and Trust – 2009").

19.     Despite the fact that the rights of RSA's members including the individual Plaintiffs are vested for life in their rights to retiree health benefits from Defendants, at the level provided at the time of their retirement, MEA has now unilaterally cut and changed these benefits. On January 15, 2019, Defendant MEA sent a letter to retirees, including RSA's members and the individual Plaintiffs, announcing that Defendants would, effective immediately, be unilaterally effectively reducing one of the benefits provided under Schedules A and B to the LOU, by changing the formulary applicable to retiree prescription drugs from a program maintained by MESSA to a

Medicare Part D arrangement administered by Blue Cross and Blue Shield of Michigan.  This change effectively reduced the availability of needed medications and increased out-of-pocket costs for many of RSA's members, and also exposed RSA's members for the first time to an additional tax, Income Related Monthly Adjustment Amount ("IRMAA") in connection with Medicare Part D, which Defendants did not reimburse, further increasing retirees' costs.

20.     On April 22, 2019, RSA through its attorney notified Defendants that Defendants did not have the right to make this unilateral cutback, and that RSA and its members were reserving all rights to challenge the reduction.

21.     On July 16, 2019, Defendant MEA provided RSA's leaders with a letter it announced it would be sending to retirees, unilaterally effectuating further severe reductions in multiple benefit levels for all retirees, including Plaintiffs, effective September 1, 2019.   (Exhibit E, letter dated July 17, 2019.)

22.     In order to forestall imminently threatened litigation by RSA, MEA shortly thereafter agreed to delay until January 1, 2020 the implementation of all of these proposed reductions, ostensibly to permit the parties to attempt to reach some settlement.

23.     Defendants have since that time failed meaningfully to engage with RSA and have effectively rebuffed attempts to address RSA's concerns.  Upon information and belief, Defendants now intend and are currently proceeding with steps to implement all the new unilateral benefit reductions on January 1, 2020, including by conducting a meeting of retirees on November 26, 2019 to explain the impending changes.

24.     Defendants also informed Plaintiffs in November, 2019, that Defendants are no longer paying any retiree health insurance benefit costs directly; instead they are drawing down the assets of two trusts, the voluntary employees beneficiary association established by the VEBA

Document (the "VEBA"), and a "Section 401(h) account" (earmarked for retiree health insurance for retired salaried employees) under the Retirement Plan (the "401(h) Account"). As of March 31, 2018, the 401(h) Account held $66,365,985 in net assets (Exhibit F, "Excerpt from Mercer 2018 Retirement Plan Report"), and on information and belief the VEBA holds over $224,000,000 in net assets.

25.     On December 10, Defendants notified RSA of a mailing about to be sent to retirees under the age of 65, reiterating that the previously threatened changes would become effective January 1, 2020, along with an apparent further new reduction involving new required copayments for benefits.  (Exhibit G, Draft letter dated December 2, 2019.)

26.     Defendants' unilateral reduction, and threatened further reductions, of benefits constitutes a direct violation of the terms of the relevant labor agreements and employee benefit plan.

27.     As a direct consequence of Defendants' actions and threatened actions, Plaintiff RSA's membership, as well as the individual Plaintiffs, are suffering and will suffer further irreparable harm.

28.     If Defendants are not immediately enjoined from implementing the proposed changes, RSA's membership, as well as all the individual Plaintiffs, will continue to suffer irreparable harm.

29.     Plaintiffs lack an adequate remedy at law to address the substantial and irreparable harm they are suffering and will suffer as the result of Defendants' actions.

## COUNT I
## BREACH OF LABOR AGREEMENT – SECTION 301 OF LMRA

30.     Plaintiff incorporates each of the prior paragraphs as though fully set forth herein.

31.     Many of RSA's members, including Ms. Parker and Ms. Smith, were covered by collective bargaining agreements between the Unions and Defendants, which provided post-retirement medical benefits for life to those retirees who satisfied the necessary age and service conditions.

32.     Many of RSA's members, including Ms. Parker and Ms. Smith, were covered in particular by the LOU between the Unions and Defendants, which as described above explicitly states that the specified "retiree fringe benefits ... become *vested for life*" upon retirement with the requisite age and years of service.  (See Exh. A.)

33.     RSA's members, including Ms. Parker and Ms. Smith, who were covered by the LOU between the Unions and Defendants have satisfied all the conditions which entitle them and their eligible dependents to vested lifetime health care benefits at the levels in effect at the time of their retirement.

34.     By unilaterally reducing the vested health care benefits of RSA's members, including Ms. Parker and Ms. Smith, who were members of collective bargaining units while employed by Defendants, Defendants have breached, and threaten to breach further, the terms of labor agreements subject to the LMRA, for which remedy is provided under Section 301 of the LMRA.

35.     As a direct and proximate result of Defendants' breaches and threatened breaches of the terms of labor agreements, Plaintiffs, including Ms. Parker and Ms. Smith, who were members of collective bargaining units while employed by Defendants, have been and will be damaged in an amount that is difficult to calculate with certainty.  Plaintiffs have brought this action to obtain extraordinary relief for which Plaintiffs have no adequate remedy at law.

36.     Plaintiffs, including Ms. Parker and Ms. Smith, who were members of collective bargaining units while employed by Defendants, are entitled to preliminary and permanent injunctive relief against further breaches of the terms of labor agreements.

37.     Plaintiffs, including Ms. Parker and Ms. Smith, who were members of collective bargaining units while employed by Defendants, are further entitled to monetary damages equal to the reduction in benefits previously instituted by Defendants in violation of the terms of labor agreements.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiffs request:

(1)     That this Court issue a permanent injunction restraining and enjoining Defendants, their agents, servants and employees, representatives and those people in active concert or participation with them, directly or indirectly implementing the reductions proposed to Plaintiffs' medical, insurance and reimbursement benefits, and from otherwise violating their obligations under the LMRA and collective bargaining agreements;

(2)     That Defendants be required to restore, with retroactive effect, the retiree prescription drug formulary to that in effect before the change implemented in January of 2019;

(3)     That Plaintiff be granted as relief money damages, including exemplary and/or punitive damages, all other appropriate damages, as well as all interest, costs, and disbursements of this action, including reasonable attorneys' fees, and such other relief as this Court may deem just and proper.

(4)     That Plaintiff be granted all other just and proper relief as this Court may determine.

## COUNT II
## VIOLATION OF ERISA

38.     Plaintiff incorporates each of the prior paragraphs as though fully set forth herein.

39.     The medical insurance plan maintained by Defendants for the purpose of providing health care benefits for RSA's members and the other Plaintiffs and their eligible

dependents (the "Plan") is an "employee welfare benefit plan" within the meaning of Section 3(1) of ERISA, 29 U.S.C. § 1002(1).

40.     Each of the LOU (Exh. A), the VEBA Document (Exh. C), and the provisions of the Retirement Plan addressing retiree medical benefits (Exh. D) forms a binding, irrevocable part of the documents and instruments governing the Plan.

41.     Defendants are the "plan sponsors" and "administrators" of the Plan within the meaning of Section 3(16) of ERISA, 29 U.S.C. § 1002(16).

42.     Defendants are "fiduciaries" of the Plan within the meaning of Section 3(21) of ERISA, 29 U.S.C. § 1002(21).

43.     RSA's members and the individual Plaintiffs are "participants" in the Plan within the meaning of Section 3(7) of ERISA, 29 U.S.C. § 1002(7).

44.     Under the explicit terms of the Plan, Defendants promised to provide RSA's members and the other Plaintiffs and their eligible dependents with the negotiated level of health care benefits, at the level in effect at the time of their retirement, for the duration of their lives.

45.     RSA's members and the individual Plaintiffs have satisfied all the conditions which entitle them and their eligible dependents to vested lifetime health care benefits.

46.     By unilaterally changing the prescription drug formulary effective January 1, 2019, Defendants have reduced the level and raised the effective costs of the prescription drug benefits to which RSA's members and the individual Plaintiffs have vested rights.

47.     By threatening unilaterally to reduce further the vested health care benefits of RSA's members and the other Plaintiffs, Defendants threaten to violate the terms of the Plan and to fail to pay benefits due thereunder, which is prohibited under Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3); and to fail to administer the Plan in accordance with the documents and

instruments governing the Plan, which is prohibited under Section 404(a)(1)(D) of ERISA, 29 U.S.C. § 1104(a)(1)(D).

48.    As a direct and proximate result of Defendants' threatened breaches of the Plan, RSA's members and the other Plaintiffs are threatened with damage in an amount that is difficult to calculate with certainty.  Plaintiffs have brought this action to obtain extraordinary relief for which Plaintiffs have no adequate remedy at law.

49.    Under Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), a civil action may be brought by participants of a plan subject to ERISA: "(A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

50.    Plaintiffs are entitled to injunctive relief against further violations of the terms of the Plan, as well as restoration, with retroactive effect, of the retiree prescription drug formulary to that in effect before the change unilaterally implemented by Defendants in January of 2019.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiffs request:

(1)    That this Court issue a permanent injunction restraining and enjoining Defendants, their agents, servants and employees, representatives and those people in active concert or participation with them, directly or indirectly implementing the reductions proposed to Plaintiffs' medical, insurance and reimbursement benefits, and from otherwise violating their obligations under ERISA and the relevant employee benefit plan/s;

(2)    That Defendants be required to restore, with retroactive effect, the retiree prescription drug formulary to that in effect before the change implemented in January of 2019;

(3)    That Plaintiff be granted as relief money damages, including exemplary and/or punitive damages, all other appropriate damages, as well as all interest, costs, and disbursements of this action, including reasonable attorneys' fees, and such other relief as this Court may deem just and proper.

(4)     That Plaintiff be granted all other just and proper relief as this Court may determine.

## COUNT III
## EQUITABLE ESTOPPEL

51.     Plaintiff incorporates each of the prior paragraphs as though fully set forth herein.

52.     A cause of action is recognized under ERISA for "equitable estoppel," where a plan sponsor misrepresents a material fact or facts, and a plan participant relies to his or her detriment upon that misrepresented fact or facts. *Sprague v. Gen. Motors Corp.,* 133 F.3d 388, 403-04 n. 12 (6th Cir.1998).

53.     A number of RSA's members were promised, as an inducement to become employees of Defendants and their affiliates, that, if they retired after meeting the applicable age and service requirements, the Employers would maintain their retiree medical benefits for life, at the levels in effect at the time of the members' retirement.

54.     These members relied upon this promise, in accepting employment with Defendants and in leaving their previous employment.

55.     A number of RSA's members were promised, as an inducement to retire from employment with the Employers, that the Employers would maintain their retiree medical benefits for life, at the levels in effect at the time of the members' retirement.

56.     During the careers of RSA's membership, Defendants instituted several formal early retirement incentive programs ("EIPs") designed to encourage the early retirement of employees and achieve reductions in headcount.  Many of RSA's members participated in an EIP.  One or more EIP was expressly predicated upon Defendants' contractually binding promise of lifetime post-retirement medical benefits at the levels being provided upon retirement.

57.     Members of RSA relied upon the foregoing promises, in choosing employment with Defendants, in choosing the time of their retirement from the Defendants, and in not pursuing further employment.

58.     Defendants are equitably estopped under ERISA, as a result of the foregoing, from reducing the benefits of RSA's members who relied on Defendants' promises.

59.     RSA and its members have brought this action to obtain injunctive relief to prevent Defendants from damaging them by taking actions they are equitably estopped from taking.

## REQUEST FOR RELIEF

**WHEREFORE,** Plaintiffs request:

(1)     That this Court issue a permanent injunction restraining and enjoining Defendants, their agents, servants and employees, representatives and those people in active concert or participation with them, directly or indirectly implementing the reductions proposed to Plaintiffs' medical, insurance and reimbursement benefits, and from otherwise violating their obligations under ERISA and the relevant employee benefit plan/s;

(2)     That Defendants be required to restore, with retroactive effect, the retiree prescription drug formulary to that in effect before the change implemented in January of 2019;

(3)     That Plaintiff be granted as relief money damages, including exemplary and/or punitive damages, all other appropriate damages, as well as all interest, costs, and disbursements of this action, including reasonable attorneys' fees, and such other relief as this Court may deem just and proper.

(4)     That Plaintiff be granted all other just and proper relief as this Court may determine.

## COUNT IV
### (IN THE ALTERNATIVE TO COUNTS II AND III)
### BREACH OF CONTRACT

60.     Plaintiff incorporates each of the prior paragraphs as though fully set forth herein.

61.     A number of RSA's members were promised, orally and in written documents that are outside of and do not refer to any particular plan, that, if they retired after meeting the

applicable age and service requirements, the Employers would maintain their retiree medical benefits for life, at the levels in effect at the time of the members' retirement.

62.     These members relied upon these promises, in accepting employment with Defendants and in leaving their previous employment, and in choosing the time of their retirement from the Defendants and in not pursuing further employment.

63.     Defendants' promises to RSA's members made without reference to a particular plan constituted binding, irrevocable contractual commitments enforceable under Michigan state law.

64.     By reducing their health care benefits, Defendants have violated, and threaten to violate further, the terms of legally binding contractual obligations they owe to members of RSA.

65.     RSA and its members are entitled to preliminary and permanent injunctive relief against further breaches of their contracts, as well as damages for previous breaches.

66.     As a direct and proximate result of Defendants' breaches and threatened breaches of their contracts, RSA's members have been damaged in an amount that is difficult to calculate with certainty.  RSA and its members have brought this action to obtain extraordinary relief for which they have no adequate remedy at law.

## **REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiffs request:

(1)     That this Court issue a permanent injunction restraining and enjoining Defendants, their agents, servants and employees, representatives and those people in active concert or participation with them, directly or indirectly implementing the reductions proposed to Plaintiffs' medical, insurance and reimbursement benefits, and from otherwise violating their obligations under valid and binding contracts;

(2)     That Defendants be required to restore, with retroactive effect, the retiree prescription drug formulary to that in effect before the change implemented in January of 2019;

(3)     That Plaintiff be granted as relief money damages, including exemplary and/or punitive damages, all other appropriate damages, as well as all interest, costs, and disbursements of this action, and such other relief as this Court may deem just and proper.

(4)     That Plaintiff be granted all other just and proper relief as this Court may determine.

BUTZEL LONG, a professional corporation

By: /s/ Mark T. Nelson
Mark T. Nelson (P27305)
Lynn McGuire (P57124)
301 E. Liberty St., Suite 500
Ann Arbor, Michigan  48104-2283
T: (734) 995-3110
F: (734) 995-1777nelsonm@butzel.com
Attorneys for Plaintiffs

Dated: December 19, 2019

## VERIFICATION OF COMPLAINT

I, Beverly Wolkow, a citizen of the United States and a resident of the State of Michigan, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746, on behalf of the Michigan Education Association Family Retired Staff Association, that I have read the foregoing Verified Complaint and the factual allegations therein, and that: (i) I believe all the allegations of which I have personal knowledge to be true and correct; and (ii) I believe all the allegations of which I do not have personal knowledge to be true and correct, based on affidavits filed as exhibits to the foregoing Verified Complaint.

Executed this _____19ᵗʰ_____ day of December, 2019, at _____Mason_____, Michigan.

MICHIGAN EDUCATION
ASSOCIATION FAMILY RETIRED
STAFF ASSOCIATION

Beverly Wolkow
Member of the Board of Directors

530154